**No. 22-15142**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

ANYKA HARRIS, individually and as successor-in-interest to Jontell
Reedom, BOBBY REEDOM, individually and
as successor-in-interest to Jontell Reedom,

Plaintiffs/Appellees
v.
CITY OF TULARE, CLEMENTE CLINTON, individually, JOSE
VALENCIA, individually, and DOES 3-10, inclusive,

Defendants/Appellants.
_____

Appeal from the United States District Court
for the Eastern District of California
Case No. 1:18-cv-01135 JLT SKO
Hon. Dale A. Drozd
_____

**APPELLANTS' OPENING BRIEF**
_____

Bruce D. Praet SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 telephone
(714) 953-1143 facsimile
bpraet@aol.com
Attorneys for Defendants/Appellants

1

# TABLE OF CONTENTS

I.      STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . .  6

II.     STATEMENT OF ISSUES PRESENTED. . . . . . . . . . . . . . .  6

III.    STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . .  7

IV.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . .  9

V.      SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . .  14

VI.     ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

        INDIVIDUAL OFFICERS ARE ENTITLED TO
        QUALIFIED IMMUNITY IN THE ABSENCE OF
        "CLEARLY ESTABLISHED" PRECEDENT. . . . . . . . . . . .  20

        A.    *Lam v. City of Los Banos*
              *976 F3d 986 (9th Cir. 2020)*  . . . . . . . . . . . . . . . . . . . .  25

        B.    *Zion v. Cty. of Orange*
              *874 F3d 1072 (9th Cir. 2017)*  . . . . . . . . . . . . . . . . . .  29

        C.    *Newmaker v. Fortuna*
              *842 F3d 1106 (9th Cir. 2016)*  . . . . . . . . . . . . . . . . . .  30

VII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . .  34

STATEMENT OF RELATED CASE . . . . . . . . . . . . . . . . . . . . . . .  35

PROOF OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Billington v. Smith (9th Cir. 2002)*
*292 F3d 1177* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

*Brown v. U.S. (1921)*
*256 U.S. 335* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Casillas v. Fresno (E.D. Cal. 2018)*
*342 F.Supp. 3d 990.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Cty. of Los Angeles v. Mendez (2017)*
*137 S.Ct. 1539* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

*Dist. of Columbia v. Wesby (2018)*
*138 S.Ct. 577* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Escondido v. Emmons (2019)*
*139 S.Ct. 500* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 24

*Evans v. Skolnik (9th Cir. 2021)*
*997 F3d 1060* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Graham v. Connor (1989)*
*490 U.S. 386* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Hopkins v. Andaya (9th Cir. 1982)*
*958 F2d 881* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 28

*Isayeva v. Sacramento Sheriff's Dept. (9th Cir. 2017)*
*872 F3d 938* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Johnson v. Bay Area Rapid Transit (9th Cir. 2013)*
*724 F3d 1159* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Kisela v. Hughes (2018)*
*138 S.Ct. 1148* . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 23, 25, 30

*Lal v. California (9th Cir. 2014)*
*746 F3d 1112* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Lam v. City of Los Banos (9th Cir. 2020)*
*976 F3d 986* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25, 26, 28, 29

*Mitchell v. Forsyth (1985)*
*472 U.S. 511* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morales v. Fry (9th Cir. 2017)*
*873 F3d 817* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Mullenix v. Luna (2015)*
*136 S.Ct. 305* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21-23, 26

*Newmaker v. City of Fortuna (9th Cir. 2016)*
*842 F3d 1106* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 31

*Pearson v. Callahan (2009)*
*555 U.S. 223* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 21, 22, 27

*Plumhoff v. Rickard (2014)*
*572 U.S. 765* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*San Francisco v. Sheehan (2015)*
*135 S.Ct. 1765* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 23, 29

*Shafer v. Cty. of Santa Barbara (9th Cir. 2017)*
*868 F3d 1110* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sorrels v. McKee (9th Cir. 2002)*
*290 F3d 965* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Torres v. Los Angeles (9th Cir. 2008)*
*548 F3d 1197* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Vos v. Newport Beach (9th Cir. 2018)*
*892 F3d 1024* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 28

*White v. Pauly (2017)*
*137 S.Ct. 548* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wilkinson v. Torres (9th Cir. 2010)*
*610 F3d 546* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Zion v. Cty. of Orange (9th Cir. 2017)*
*874 F3d 1072* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 28-30

## UNITED STATES CODE

28 USC § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 USC § 1343(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## I.   <u>STATEMENT OF JURISDICTION.</u>

The jurisdiction of the district court arises out of 28 USC § 1343(3) for consideration of Plaintiffs' constitutional claims under the Fourth Amendment. This Court has jurisdiction to hear the appeal of the district court's denial of qualified immunity on summary judgment as interlocutory review pursuant to 28 USC § 1291 with questions of law subject to de novo review. *Johnson v. Bay Area Rapid Transit, 724 F3d 1159, 1164 (9th Cir. 2013).*

The district court's denial of qualified immunity was entered on January 21, 2022, and a timely notice of appeal was filed by these Appellants on January 28, 2022. Appellants do not appeal the district court's grant of summary judgment as to Plaintiffs' Fourteenth Amendment and stipulated dismissal of so-called *Monell* claims.

## II.   <u>STATEMENT OF ISSUES PRESENTED.</u>

During an attempt to detain an assault suspect, the individual brutally pummeled one officer with fists and could not be subdued by two officers despite multiple applications of a Taser, Pepper Spray and a baton. When the suspect took one officer's baton and raised it into a striking position, both officers made the split-second decision to simultaneously fire their handguns, fatally wounding the

individual.  Because the district court denied qualified immunity to the individual officers on summary judgment, this appeal raises the following issue:

Are individual Officers Clinton and Valencia entitled to qualified immunity from a claim that they used unreasonable force in defending themselves from an armed, defiant and threatening assault suspect in the absence of "clearly established" law sufficient to meet the Supreme Court's specificity mandate?

## III.  <u>STATEMENT OF THE CASE.</u>

Decedent, Jontell Reedom (hereafter "Jontell"), was known to Tulare police as a result of several relatively minor incidents involving disturbances and other complaints.  On the afternoon of March 12, 2018, officers were dispatched to a call that an individual (later determined to be "Jontell") had randomly punched a school bus driver and was leaving the area of the highschool.

When uniformed Officer Clinton initially tried to make casual verbal contact with Jontell to investigate the reported assault, Jontell responded with obscenities and walked away.  When told to "stop", Jontell suddenly turned to face Officer Clinton with clenched fists at a distance of only 4-6 feet.  Suspecting that Jontell was under the

influence of narcotics and, hoping to avoid a violent confrontation, Officer Clinton deployed his Taser which unfortunately had no effect. Jontell then punched Officer Clinton, knocking the officer to the ground where Jontell continued to pummel the officer with brutal punches.[1] As Officer Clinton was eventually able to kick Jontell off of him, the officer called for expedited assistance.

Officer Valencia arrived to find Jontell walking away from a bloodied Officer Clinton and yelled "Jontell, stop". Correctly believing that Jontell had just beaten Officer Clinton and, in response to Jontell's defiant "I'm not stopping", Officer Valencia deployed his own Taser which was again ineffective other than to have Jontell turn and punch Officer Valencia. After another "drive stun" (i.e. direct contact) application of the Taser, Jontell began to walk away from both officers who followed him across a busy roadway.[2]

Recognizing that Jontell was not going to submit to verbal or physical efforts and that several Taser applications had been

---

[1] Although Tulare PD did not have body worn cameras or dashcams at the time, this beating was captured on the dashcam of a passing motorist.

[2] This portion of the incident was separately captured by the cell phone of a passing motorist.

ineffective, Officer Valencia removed his baton and attempted to strike Jontell as he continued to defy orders to stop. Officer Clinton also deployed Pepper Spray which similarly had no effect on Jontell. When both officers caught up to Jontell on the opposite sidewalk, a physical struggle ensued with Jontell during which the passing motorist can be heard exclaiming "*Oh, he took it away from him*" in reference to Jontell seizing Officer Valencia's baton.

Unfortunately, a passing vehicle then momentarily blocked the camera view which last depicted Jontell facing Officer Valencia while armed with the officer's baton. Immediately after the vehicle passed, a blurred image of Jontell[3] standing in front of Officer Valencia appears right before a series of rapid gunshots is heard and Jontell fell to the sidewalk where he was secured and eventually died despite medical efforts to save him.

## IV. <u>STATEMENT OF FACTS.</u>

With few exceptions (noted *infra*), Appellants will set forth the facts outlined by the district court in its ruling on the underlying

---

[3]

It is this blurred image at 00:35 which the district court concluded was a material issue of fact. [lodged as Ex. "6" to Defendants' Motion for Summary Judgment, 1-ER-008 (Motion to Transmit Physical Exhibit Pending)

summary judgment motion and necessarily viewed most favorably to the non-moving party.

Prior to the date of this incident on March 12, 2018, Jontell Reedom ("Jontell") had had multiple contacts with the Tulare Police Department, including at least a couple of relatively minor contacts with the involved Officers Valencia and Clinton. Jontell may have initially been uncooperative during at least one of these prior contacts with Officer Valencia, but he had become cooperative after speaking with the officer. [1-ER-003-004] Although some members of the Tulare Police Department may have been aware of possible mental health issues with Jontell, there is no evidence that either Officer Clinton or Valencia were aware of this information. [1-ER-004] On the contrary, both officers testified that they perceived Jontell's aggressive behavior on the date of this incident as consistent with being under the influence of drugs rather than any sort of mental illness. [1-ER-0025]

On the day of this incident (March 12, 2018), Officer Clinton responded to a report that an individual later identified as Jontell had randomly punched a school bus driver for no apparent reason. [1-ER-004]. There was no information regarding any injury to the bus driver

and no report that the suspect was armed. When the uniformed Officer Clinton located Jontell walking nearby, the officer exited his marked police car and attempted to speak with Jontell to further investigate the reported assault. However, Jontell replied with "Fuck you, I don't even know if you're a real cop" and walked away from the officer. [1-ER-005]

Intending to detain Jontell for further investigation of the reported assault, Officer Clinton ordered him to stop and come back. [1-ER-005]. Although Jontell did stop and begin walking back toward Officer Clinton, he took an aggressive posture with his fists clenched. [Id.] Knowing that Jontell had reportedly punched a bus driver and was now advancing with clenched fists, Officer Clinton deployed his Taser when Jontell was only about four feet in front of the officer. [Id.] Unfortunately, the Taser had no effect on Jontell who then began punching Officer Clinton about the head. This portion of the incident was captured by the dashcam of a passing motorist [lodged as Ex. "3" to Defendants' Motion for Summary Judgment, 2-ER-0065] (Motion to Transmit Physical Exhibit Pending)] and at approximately 00:31 of the video, Jontell can be seen violently

pummeling the downed Officer Clinton with multiple fist strikes for about seven seconds.

Eventually, Officer Clinton was able to defend himself by kicking Jontell away as the officer called for an expedited backup. [1-ER-006] When Officer Valencia arrived, he ordered Jontell to stop as he saw him walking away from a bloodied Officer Clinton. However, when Jontell declared "I'm not stopping", Officer Valencia discharged his Taser which again had no effect on Jontell. [1-ER-006-007] At this point, a passing motorist captured portions of the incident on a cell phone video [lodged as Ex. "6" to Defendants' Motion for Summary Judgment, 3-ER-0420 (Motion to Transmit Physical Exhibit Pending)]. At the beginning of the video, Officer Valencia can be seen chasing Jontell as he runs away while the still dazed Officer Clinton attempts to follow at a slower pace.

Recognizing that Jontell had now reportedly assaulted a bus driver without provocation and had feloniously assaulted and injured Officer Clinton, Officer Valencia discharged a second Taser application, again with no effect. [See: video at 00:06] As Jontell continued to run toward a busy street, Officer Valencia followed. When they reached the street corner, Jontell suddenly stopped, faced

12

Officer Valencia and delivered an initial punch to Officer Valencia's face followed by several more violent strikes. [Video at 00:15-00:20] As Jontell stepped into the roadway, Officer Valencia drew his baton and swung, but missed, Jontell. [Video at 00:22]

When Jontell and Officer Valencia reached the opposite sidewalk, Officer Clinton caught up and discharged Pepper Spray in a further attempt to subdue Jontell. [See: Video at 00:29] Just as several Taser applications had failed to subdue Jontell, the Pepper Spray had no apparent effect other than to cause Officer Clinton to step back, holding his hand to his earlier sustained facial injuries. As Officer Clinton tended to his injuries, Officer Valencia again swung his baton at Jontell as he turned to face the officer (it is unclear whether Jontell was struck).

Rather than attempting to flee, Jontell forcibly took Officer Valencia's baton [Video at 00:35] as the bystanders can be heard exclaiming *"Oh, he took it away from him"*. Just before a passing vehicle momentarily blocked the view, Officer Valencia can be seen advancing toward Jontell in an effort to retrieve his baton. Just before the passing vehicle blocked the view for approximately three seconds, a blurred image of Jontell standing with his back to the

13

camera as he faces Officer Valencia on the sidewalk can be seen as both officers can be heard firing a rapid series of shots (duration 1.2 seconds). [Video at 00:38] At 00:40 on the video, Jontell can be seen collapsed on the sidewalk at Officer Valencia's feet while Officer Clinton is approximately 10-12 feet away at the curb of the street. Although the video is admittedly a bit blurry at the critical moment, the image clearly depicts Jontell standing directly in front of Officer Valencia on the sidewalk at the moment of the first shot.

Both officers have testified, and Plaintiffs have offered no evidence to the contrary, that Jontell had raised the baton toward the nearby Officer Valencia just prior to the shots. 1-ER-008] Although the district court determined that the position of Jontell's hand at the moment of the shooting was the material issue of fact precluding a determination that there was no constitutional violation as a matter of law, the circumstances underlying an analysis of "clearly established" law are not in dispute.

## V. SUMMARY OF ARGUMENT.

While Appellants might respectfully disagree with the district court's conclusion that a reasonable jury could determine that these officers might have used excessive force [1-ER-0022-0023],

14

Appellants agree that the district court was obligated on summary judgment to view the facts most favorably to the non-moving party (i.e. Plaintiffs). As such, Appellants will narrowly limit the scope of this appeal to the district court's flawed analysis of the "clearly established" prong of qualified immunity.

The existence of a genuine dispute about the reasonableness of an officer's use of force does not preclude granting qualified immunity. *Isayeva v. Sacramento Sheriff's Dept., 872 F3d 938, 945 (9th Cir. 2017)* As this Court has consistently noted, the existence of factual issues precluding summary judgment on the issue of whether officers violated a decedent's Fourth Amendment rights does not end the inquiry. *Vos v. Newport Beach, 892 F3d 1024, 1034 (9th Cir. 2018).* On the contrary, individual officers remain protected from civil liability insofar as their conduct does not violate "clearly established" rights. *Id.,* quoting *Pearson v. Callahan, 555 U.S. 223, 231 (2009)* Notwithstanding the possibility that a jury might potentially find an officer's use of force excessive, the existence of clearly established rights in the context of this case is a purely legal question for the court. *Morales v. Fry, 873 F3d 817, 825 (9th Cir. 2017)*

15

It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established. *Shafer v. Cty. of Santa Barbara, 868 F3d 1110, 1118 (9th Cir. 2017)* A plaintiff must identify a case where an officer acting under similar circumstances as these officers was held to have violated the Fourth Amendment. *White v. Pauly, 137 S.Ct. 548, 552 (2017).* In the instant case, neither the Plaintiffs nor even the district court came anywhere close to satisfying the Supreme Court's repeatedly demanding standard of citing existing precedent which would have placed these officers on sufficient notice in 2018 that it would have been beyond debate that their split-second decisions in the specific context of this case would violate clearly established law. *San Francisco v. Sheehan, 135 S.Ct. 1765, 1774 (2015).* When neither plaintiff nor a district court can cite a case with sufficient specificity to qualify as "clearly established" law, a police officer acting under rapidly evolving, tense and uncertain circumstances cannot be expected to anticipate some non-existent case law. *Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)*

In apparent recognition that none of the generalized cases cited by Plaintiffs were sufficient to meet the Supreme Court's requirement for "specificity" [*Escondido v. Emmons, 139 S.Ct. 500, 503 (2019)*],

the district court took it upon itself to rely upon two cases which are regrettably so easily distinguished from the facts of the instant case that the differences virtually "leap off the page". *Sheehan, supra. 135 S.Ct. at 1776.* As more fully set forth below:

- *Lam v. City of Los Banos, 976 F3d 986 (9th Cir. 2020)* [1-ER-0027-0029] was not only decided two years after this 2018 incident [qualified immunity may not be denied based on cases that post-date the incident. *Kisela v. Hughes, 138 S.Ct. 1148, 1154 (2018)*], but suffers from a glaringly consistent factual distinction present in every case relied upon by the district court - i.e. unlike Officers Clinton and Valencia, the involved officer(s) in each case fired shots following a substantial delay after which the suspect was clearly unarmed.

- *Zion v. Cty. of Orange, 874 F3d 1072 (9th Cir. 2017)* [1-ER0028-0029] - recognizing that the 2020 decision in *Lam* could not serve as clearly established law for this 2018 incident, the district court looked to *Zion* as the authority relied upon by the *Lam* Court. Ironically, however, the Court in *Zion* found that the original volley

17

of shots (like those here) were likely reasonable and that the only "clearly established" violation was the second volley of nine shots and head kick (neither present here) after the suspect was down violated the Fourth Amendment.

- Although not mentioned by the district court here, the Court in *Zion,* relied upon *Hopkins v. Andaya, 958 F2d 881 (9th Cir. 1982)* which understandably established that a second volley of shots fired a minute or two after the suspect had dropped an officer's baton violated the Fourth Amendment. In the instant case, Officers Clinton and Valencia fired only one rapid volley of shots, all within 1.2 seconds, less than three seconds after Jontell had taken Officer Valencia's baton.

- *Newmaker v. City of Fortuna, 842 F3d 1106 (9th Cir. 2016)* [1-ER-0029-0031] - while the district court attempted to bolster its position by referencing *Newmaker,* this Court undertook absolutely no qualified immunity analysis under the "clearly established" prong in that case, but instead reversed summary judgment

simply because of substantial evidence and credibility issues involving officers who appeared to shoot the subject after he had fallen to the ground (not present here).[4]

Because "qualified immunity is 'an immunity from suit rather than a mere defense from liability. . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).* Extending qualified immunity here to Officers Clinton and Valencia fulfills the Supreme Court's demand to shield them from liability "even if their actions might have resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact". *Pearson v. Callahan, 555 U.S. 223, 231 (2009).* However, granting these officers their entitlement to qualified immunity will not preclude Plaintiffs from any potential recovery under remaining theories of liability, it will simply provide

---

[4]

The district court inexplicably suggests that officers continued to shoot Jontell after he fell to the ground. [1-ER-009, L7-9]. However, it is not and cannot be disputed that all shots were fired within 1.2 seconds from the time Jontell is clearly standing until the moment he falls to the ground. As the Supreme Court noted in *Plumhoff v. Rickard, 572 U.S. 765, 777 (2014),* it is improper to dissect rapidly fired shots into separate and distinct actions when they are all fired in a short period.

these very competent officers with the "breathing room" to make reasonable, even mistaken, split-second judgments under rapidly evolving, tense and uncertain circumstances. *Id.*

## VI.   ARGUMENT.

## INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY IN THE ABSENCE OF "CLEARLY ESTABLISHED" PRECEDENT.

For the limited purpose of this appeal, Appellants recognize and accept that, necessarily viewing the facts most favorably to the non-moving parties, the district court was unable to grant qualified immunity to Officers Clinton and Valencia under the first prong by declaring that no constitutional violation could have occurred as a matter of law.  The disputed fact upon which the district court denied qualified immunity under this prong was how a jury might or might not view the blurred image of Jontell standing in front of Officer Valencia immediately after having disarmed the officer of his baton. However, as this Court recently held "despite factual issues which preclude summary judgment on the issue of whether the officer's violated Fourth Amendment rights, that is not the end of the inquiry." *Vos v. Newport Beach, 892 F3d 1024, 1034 (9ᵗʰ Cir. 2018)*; *Torres v.*

*Los Angeles, 548 F3d 1197, 1210 (9th Cir. 2008)*.

Notwithstanding the district court's conclusion that a factual issue existed as to whether Officers Clinton and Valencia violated Jontell's Fourth Amendment rights, the officers are nonetheless entitled to qualified immunity insofar as their conduct did not violate "clearly established" rights. *Pearson v. Callahan, 555 U.S. 223, 231 (2009)*. Independent of the possibility that a jury might potentially find an officer's use of force unreasonable, the existence of "clearly established" rights is purely a legal question for the court. *Morales v. Fry, 873 F3d 817, 825 (9th Cir. 2017)* It is on this issue that Appellants respectfully submit that the district court relied on cases which were too general to have put these officers on notice that it was "beyond debate" that their split-second decision under these rapidly evolving, tense and uncertain specific circumstances were in violation of "clearly established" precedent. *Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)*.

Although it is perhaps theoretically possible that a jury could disbelieve Officers Valencia's and Clinton's undisputed testimony that Jontell was raising the baton in the three seconds between the moment he undeniably seized it from Officer Valencia and the

moment he was shot while clearly standing directly in front of Officer Valencia, the Supreme Court has made it clear that "qualified immunity shields officers from liability even if his or her action resulted from 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact'". *Pearson, supra.* In short, "qualified immunity gives officers breathing room to make reasonable but mistaken judgments." *Evans v. Skolnik, 997 F3d 1060, 1069 (9th Cir. 2021)* (citations omitted).

This Court is obviously aware of the Supreme Court's repeated admonishment "not to define 'clearly established' law at a high level of generality". *Mullenix, supra. at 308.* A clearly established right is one that "is sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Id.* It simply cannot be said that Officers Valencia and Clinton could have guessed that shooting a demonstrably violent Jontell within three seconds after he had taken Valencia's baton would render it beyond debate that they'd be violating a "clearly established" right given the series of violent assaults committed by Jontell and the ineffectiveness of multiple Taser applications, Pepper Spray and even baton strikes. As the Supreme Court has repeatedly held, "clearly established law must

be '*particularized*' to the facts of the case." *Ibid.* (emphasis in orig.)

Appellants do not take issue with a generalized statement that it is "clearly established" that officers may not use deadly force against an individual who, unlike Jontell, is clearly unarmed or even against a passive individual who may be armed.[5]  However, such generalized statements are not inherently capable of giving fair and clear warning to officers that their conduct in a specific situation, like that presented here, was violating clearly established law. *Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018).*  Instead:

> "Specificity is especially important in the Fourth Amendment context where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela, 138 S.Ct. at 1152.*

---

[5]

The district court also references the opinion of Plaintiffs' expert, Roger Clark, for the proposition that "a reasonable officer would not have believed that they were being confronted with an immediate defense of life situation." [1-ER-009, L14].  However, the Supreme Court has made it clear that an expert's opinion cannot defeat qualified immunity on summary judgment. *San Francisco v. Sheehan, 575 U.S. 600, 616 (2015)*

23

In the qualified immunity context, "a rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established at the time." *Dist. of Columbia v. Wesby, 138 S.Ct. 577, 590 (2018)*

Here, the district court unfortunately relied upon cases, not even cited by Plaintiffs, which simply cannot meet the Supreme Court's demanding requirement of specificity.[6] *Escondido v. Emmons, 139 S.Ct. 500, 503 (2019).*

The central, but critical, distinguishing aspect of every case relied upon by the district court is that, *inter alia,* the force in each case was used after a substantial time delay during which period the suspect was clearly unarmed. Here, however, Officers Valencia and Clinton fired all shots within 1.2 seconds after only three seconds had

///

---

[6]

Unrelated to its analysis of "clearly established" law, the district court made reference to a district court case in which a jury concluded that it was unreasonable for an officer to shoot a non-violent individual armed with a pipe. *Casillas v. Fresno, 342 F.Supp. 3d 990 (E.D. Cal. 2018)* [1-ER-0021-0022] However, even the district court noted the factual distinctions between *Casillas* and the instant case. [1-ER-0022, fn.12] Moreover, *Casillas* was decided after the current incident and, as a district court decision, may not serve as "clearly established" law. *Sorrels v. McKee, 290 F3d 965, 971 (9ᵗʰ Cir. 2002)*

elapsed since the very violent Jontell had taken Officer Valencia's baton and remained in close proximity to the officer.

###     A.     *Lam v. City of Los Banos, 976 F3d 986 (9ᵗʰ Cir. 2020*)

Although the district court seemed to recognize that this 2020 decision cannot serve as "clearly established" law for this 2018 incident, it nonetheless relied heavily upon the case.  [1-ER-0027-0029] Notwithstanding the fact that qualified immunity may not be denied based on cases that post-date the incident [*Kisela v. Hughes, 138 S.Ct. 1148, 1154 (2018)*], Appellants will point out the many remarkable factual distinctions which preclude reliance upon *Lam* as clearly established law.

| **Lam** | **Jontell (Instant Case)** |
|---|---|
| • The officers had been told that the suspect was mentally ill. | • Neither Officer Clinton nor Officer Valencia had knowledge that Jontell had any mental health issues. |
| • The suspect was confined to a bedroom. | • Jontell had already randomly assaulted a bus driver in public and was confronted on public streets. |
| • No less-than-lethal attempts were made to control the suspect. | • Officers (unsuccessfully) attempted less-than-lethal force, including four Taser applications, Pepper Spray and a baton. |

| | |
|---|---|
| • The officer had retreated down a hallway some distance from the suspect before the second shot. | • Jontell was standing directly in front of Officer Valencia at the time shots were fired. |
| • The officer fired a first shot, but had time to clear his gun before firing the shot in question. | • All shots took only 1.2 seconds and were fired within three seconds of Jontell taking Officer Valencia's baton. |
| • The involved officer had pre-existing PTSD. | • Officers had no pre-existing issues. |

Even assuming that a jury could somehow conclude that Jontell might not have actually had the baton raised over his head as he faced Officer Valencia (despite a complete lack of evidence from Plaintiffs to support such a claim), the facts of *Lam* simply cannot be said to render it "beyond debate" to Officers Valencia and Clinton that they would be violating "clearly established" law in these specific circumstances. *Mullenix, 136 S.Ct. At 309.* Considering the district court's conclusion that a jury could theoretically decide that the baton was not raised above Jontell's head, these officers are certainly not required to assume that the demonstrably violent Jontell had some benign intention. The Fourth Amendment does not require omniscience and absolute certainty of harm for an officer to act in self-defense. *Wilkinson v. Torres, 610 F3d 546, 553 (9th Cir. 2010).*

26

Given Jontell's unprovoked attack on a random bus driver, his pummeling of Officer Clinton and his continuous violent resistance to multiple less-than-lethal applications, the Supreme Court has made it clear that officers' split-second decisions in tense, rapidly evolving and uncertain circumstances cannot be viewed with the benefit of 20/20 hindsight. *Graham v. Connor, 490 U.S. 386, 396 (1989).* Whatever Jontell's unspoken intentions were in taking Officer Valencia's baton, the purpose of qualified immunity is to "shield officers from liability even if his or her action resulted from 'a mistake of law, a mistake of fact, or a mistake based on a mixed question of law and fact.'" *Pearson, 555 U.S. 223, 231.* While it is perhaps theoretically possible that Jontell wasn't going to continue his violent attacks with the baton, Judge Bea recently quoted Justice Holmes from *Brown v. U.S., 256 U.S. 335, 343 (1921)*:

> "Detached reflection cannot be demanded in the presence of an uplifted knife (baton). Therefore, in this Court, at least, it is not a condition of immunity that one in that situation should pause to consider whether a reasonable man might not think it possible to fly with safety or to disable his assailant rather

than kill him. *Vos, 892 F3d at 1039*

Unlike the long pause between shots in *Lam,* it is undisputed in this case that all shots were fired within 1.2 seconds. As the district court in *Lam* noted, even if the officer was entitled to qualified immunity for the first shot (as here), qualified immunity could not be granted for the second shot (no second volley here) which occurred after the officer had clearly retreated from a suspect who was no longer armed. *976 F3d at 994.* Here again, Appellants only seek qualified immunity for the "first shots" (all within 1.2 seconds) as there was no pause followed by the "second shots" seemingly not entitled to qualified immunity in *Lam.* In addition to the fact that *Lam* was decided post-incident, the facts of the two cases are so remarkably different as to fall far short of the specificity required by the Supreme Court.

To the extent that this Court relied on *Hopkins v. Andaya, 958 F2d 881 (9ᵗʰ Cir. 1982)* as "clearly established" law in *Lam* [*Id. p. 998*], it is similarly factually dissimilar. In *Hopkins,* it was again a second volley of shots which was at issue after the suspect had clearly dropped the officer's baton. Unlike *Lam, Hopkins* and *Zion* (*infra*), there was no substantial delay during which Jontell was clearly

28

unarmed and there was no second volley of shots fired by Officers Valencia or Clinton after Jontell had fallen to the ground.

### B. *Zion v. Cty. of Orange, 874 F3d 1072 (9th Cir. 2017)*

In recognition that the 2020 decision in *Lam* could not qualify as "clearly established" law in 2018, the district court concluded that "the same logic (of *Zion*) applies here." [1-ER-0029, L6] While this Court may have relied upon its decision in *Zion* as "clearly established" law for the long pause before shooting an unarmed suspect in *Lam,* the differences between the facts in *Zion* and the instant case virtually "leap off the page". *Sheehan, supra. 135 S.Ct. at 1776.*

| Zion | Jontell (Instant case) |
|---|---|
| • Zion was running back to his apartment complex when the officer shot him nine times in the first volley. | • Jontell was facing Officer Valencia within 5-7 feet [1-ER-008] within three seconds after taking the officer's baton when shot. [Suspect undeterred by less-than-lethal attempts within 7-8 ft. of officer creates reasonable fear of imminent serious physical harm. *Lal v. California, 746 F3d 1112, 1117 (9th Cir. 2014)*] |
| • Zion was 15 ft. away from the officer when shot. | • Jontell was standing and facing Officer Valencia when shot. |

| | |
|---|---|
| • Zion was on the ground when the officer ran up to him and shot him nine more times. | • All shots fired by both officers (nine total) were fired within 1.2 seconds. |
| • After shooting Zion a total of 18 times, the officer took a running start and stomped on his head three times. | • No shots were fired and no further force used once Jontell was on the ground. |

In *Zion,* the first nine shots were not at issue and this Court's analysis was limited to the second volley of nine shots and head stomps after Zion was clearly down. *Id., p. 1075.* Appellants certainly take no issue with the fact that it is clearly established that an officer may not shoot a down suspect nine more times or, worse, stomp on the suspect's head. Once again, however, there is simply no factual comparison to the nine shots fired by Officers Valencia and Clinton within three seconds of Jontell taking the baton and ending within 1.2 seconds of Jontell standing in front of Officer Valencia.

Quite simply, the district court's reliance on *Zion* is misplaced and cannot qualify as "precedent which squarely governs the specific facts at issue" in the instant case. *Kisela, 138 S.Ct. at 1152-53.*

## C. *Newmaker v. Fortuna, 842 F3d 1106 (9th Cir. 2016)*

Finally, the district court attempted to draw parallels between the instant case and this Court's opinion in the remarkably different

*Newmaker* case. However, this Court never undertook any analysis of the "clearly established" prong of qualified immunity in *Newmaker,* but instead reversed summary judgment solely on the basis that the officers' testimony was in marked contrast to the video evidence, the autopsy report and even their own initial statements. Other than the fact that the blurred video in the instant case does not clearly show (or not show) Jontell's hand raised with the baton at the moment of the shots, there are simply no similarities between this case and the abundance of conflicting evidence in *Newmaker.*

Although never addressed by the district court, this Court long ago analyzed a more similar case in *Billington v. Smith, 292 F3d 1177 (9th Cir. 2002),* abrogated on other grounds, *Cty. of Los Angeles v. Mendez, 137 S.Ct. 1539 (2017).* Much like the instant case, the suspect in *Billington* had violently fought with the officer and there was a factual dispute as to whether the suspect had actually grabbed the officer's weapon (gun) or whether the officer was retreating from the suspect at the time he shot him. Yet, in granting qualified immunity, this Court made it clear that:

> "Under these circumstances, a reasonable officer
>
> would perceive a substantial risk that (the suspect)

would seriously injure or kill him, either by beating

and kicking him. . . Indeed, once (the suspect)

grabbed (the officer's weapon) and tried to pry it

from his hand, a reasonable officer would infer a

substantial possibility that he was fighting for his

life.  Maybe he could have hoped that (the suspect)

simply wanted to disarm him, but that would have

been a gamble.  Under these circumstances, taking

the facts alleged in the light most favorable to

(Plaintiff), (the officer) could have reasonably shot

(the suspect) even if he had just pushed him back

a few feet.  *Id., p. 1185.*

Thus, it was actually clearly established that, even assuming

that Jontell might have simply been trying to disarm Officer Valencia

of his baton and, even assuming that Officer Valencia had perhaps

gained some slight separation from Jontell, it was in fact "clearly

established" that these officers need not have "hoped that (Jontell)

simply wanted to disarm" the officer, but instead had the right to

defend themselves against the "substantial possibility" that Jontell

would beat and seriously injure the officers.

# VII.  **CONCLUSION.**

While Plaintiffs are certainly entitled to continue to pursue their remaining claims, it is respectfully submitted that individual Officers Valencia and Clinton are equally entitled to the benefit of qualified immunity in the clear absence of any "clearly established" case meeting the Supreme Court's demanding requirement of specificity.

Dated: April 4, 2022                    FERGUSON, PRAET & SHERMAN
                                        A Professional Corporation

                              By:  ____/s/   Bruce D. Praet_____
                                   Bruce D. Praet, Attorneys for
                                   Defendants/Appellants

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 5,505 words.

Type volume limitations

| | |
|---|---|
| Appellant's Principle Brief | 14,000 |
| Appellee's Principle Brief | 14,000 |
| Any Reply Brief | 7,000 |

Dated: April 4, 2022                    Respectfully Submitted,

FERGUSON, PRAET & SHERMAN
A Professional Corporation

By:    /s/   Bruce D. Praet
Bruce D. Praet, Attorneys for
Defendants/Appellants

## STATEMENT OF RELATED CASE

To the best of the knowledge of counsel for Defendants-Appellants, there are no related cases pending before this Court or any other court.

Dated: April 4, 2022          Respectfully Submitted,

FERGUSON, PRAET & SHERMAN
A Professional Corporation

By:    /s/   Bruce D. Praet         
Bruce D. Praet, Attorneys for
Defendants/Appellees

35

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I, Cathy Sherman, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action. My business address is 1631 East 18th Street, Santa Ana, California 92705-7101.

      On April 4, 2022, I served the foregoing **APPELLANTS' OPENING BRIEF** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
dalekgalipo@yahoo.com

**THE COCHRAN FIRM CALIFORNIA**
Brian T. Dunn
Edward M. Lyman
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
bdunn@cochranfirm.com

\_\_\_    (By Mail)  I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

XXX    (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

XXX    (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a

member of the bar of this Court at whose direction the service was made.

Executed on April 4, 2022, at Santa Ana, California.


      /s/ Cathy Sherman      
Cathy Sherman